CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
June 09, 2025
LAURA A. AUSTIN, CLERK
BY: s/A. Beeson
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| ME'SHAUN CROCKER, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 7:24-cv-00910 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| MAJOR HALL, *et al.*, | ) | By:  Hon. Thomas T. Cullen |
| | ) |      United States District Judge |
| Defendants. | ) | |

Plaintiff Me'Shaun Crocker, proceeding pro se, filed this civil-rights action under 42 U.S.C. § 1983 against five corrections officers at Red Onion State Prison ("ROSP"). (*See* Compl. 1 [ECF No. 1].) Now before the court are Plaintiff's motions seeking temporary restraining orders ("TRO") and other preliminary injunctive relief. (*See* Pl.'s Mot. for TRO [ECF No. 5]; Pl.'s Mot. for Prelim. Inj. or TRO [ECF No. 7].) For the following reasons, the court will deny Plaintiff's motions.

I.

Plaintiff—a transgender female[1] inmate at ROSP, a supermaximum security prison housing primarily male inmates—alleges that Defendants have sexually harassed her on multiple occasions during restroom and shower visits and strip searches. (Compl. 2–4.) Her claims against Defendants stem from four discrete incidents. (*See id.*) First, Plaintiff alleges that, on August 6, 2024, after she had covered the window while using the restroom,

---

[1] Plaintiff's complaint does not state that she identifies as a transgender female. (*See generally* Compl.) But both her requests for injunctive relief note that she is a transgender female and claim that this fact has caused and/or contributed to the harassment she experiences at ROSP. (*See* Pl.'s Mot for TRO 1.)

Defendant Officer Potter opened the "slot," made a lewd comment to Plaintiff, and then walked away laughing. (*Id.* at 2.) Plaintiff claims that, since this incident, she "ha[s] not felt secure in using the restroom." (*Id.* at 3.)

Second, Plaintiff alleges she was "sexually abused" by Defendant Officer Mays during a strip search while on suicide watch. (*Id.* at 2–3.) Specifically, Plaintiff alleges that she was asked to lift her genitals as part of the search and that, when she initially refused, Officer May "threatened [Plaintiff] with physical abuse." (*Id.* at 3.) Plaintiff then complied. (*Id.*) Thereafter, while Plaintiff was shackled and being placed in a cell, Plaintiff told Mays that she was wearing two pairs of underwear and, rather than unshackling Plaintiff to allow her to remove the second pair, Mays "tore" the underwear off her. (*Id.*) Plaintiff claims that the "whole staff watched" this occur and that she is now fearful of seeking "mental help." (*Id.*)

Third, after having been strip searched while being placed on suicide watch a second time, Plaintiff was escorted by Defendant Lt. Fleming from a cell wearing only boxer shorts. (*Id.*) While they were walking, Fleming looked down toward Plaintiff and Plaintiff observed her genitals were exposed. (*Id.*) When Plaintiff attempted to cover up, Fleming "screamed" at Plaintiff to "stop resisting" and proceeded to "physically assault[]" Plaintiff. (*Id.*) Plaintiff claims that, as a result of this third incident, she is "more than afraid to ask for mental health services." (*Id.* at 4.)

Fourth and finally, Plaintiff alleges that, on December 9, 2024, she had a dispute with Defendant Major Hall, during which Hall "threaten[ed] to get staff on [Plaintiff]." (*Id.*) When the staff arrived, Plaintiff was again strip searched and asked to lift her genitals as part of the search. (*Id.*) Plaintiff refused to do so, claiming it was a violation of the Prison Rape

- 2 -

Elimination Act. (*Id.*) Plaintiff asked Defendant Lt. Jones, who was present and wearing a body camera, to come nearer so that the camera could record Plaintiff's refusal, but Jones refused. (*Id.*) Jones threatened to spray Plaintiff with a chemical agent if Plaintiff did not comply with the search. (*Id.*) When Plaintiff still refused, Jones sprayed her with mace. (*Id.*)

In Plaintiff's first motion seeking a temporary restraining order, Plaintiff claims that she is "still being discriminated against by staff for being a transgender female" and that she experiences "constant sexual harassments by staff for not being a biological female." (Pl.'s Mot. for TRO 1.) Plaintiff claims that she has been "physically abused" three times since the December 9, 2024 incident. (*Id.*) She offers no detail concerning the instances of alleged abuse but claims that "[o]ne was Lt. Jones and the other was a[n] officer" whose name Plaintiff does not know. (*Id.*) Plaintiff briefly references the December 9, 2024 incident, describing it as "sexual & physical abuse." (*Id.*) Plaintiff claims that she has been retaliated against since that incident, claiming that her requests "to speak with law officers" and for names and dates related to the incidents have been "met with hostility from officers and the investigators." (*Id.*) She also claims that, though she has sent criminal complaints to the state magistrate, she has received no reply and therefore "fear[s] staff is withholding mail from going out or coming in." (*Id.*) Plaintiff also claims that she lacks towels with which to shower. (*Id.*) Plaintiff generally asserts that she is "in continuous imminent danger" and "fear[s] for [her] life and safety" and that she fears that ROSP staff "will kill [her] and knowing their tactics they will sweep it under the rug." (*Id.* at 1–2.) On these bases, Plaintiff requests restraining orders against each Defendant and a transfer to another facility. (*Id.* at 2.)

Plaintiff's second motion for a TRO or preliminary injunctive relief states, without further detail, that she has been "retaliated against by staff on more than one instance" as a result of filing this action. (Pl.'s Mot. for Prelim. Inj. or TRO 1.) Plaintiff's second motion repeats her request for restraining orders against each Defendant "for a minimum of 5,000 yards" and for transfer to another facility due to the alleged imminent danger she faces. (*Id.*)

## II.

Federal Rule of Civil Procedure 65 permits district courts to issue temporary restraining orders and preliminary injunctions. Such remedies are "extraordinary and drastic remedy" and are "never awarded as of right." *Munaf v. Geren*, 553 U.S. 674, 689–90 (2008) (citations and internal quotation marks omitted). To obtain a preliminary injunction or TRO, Plaintiff must clearly show that: (1) he is "likely to succeed on the merits" of his claims; (2) he is "likely to suffer irreparable harm absent preliminary relief"; (3) "the balance of the equities favors relief"; and (4) "the relief is in the public interest." *Leaders of a Beautiful Struggle v. Baltimore Police Dep't*, 2 F.4th 330, 339 (4th Cir. 2021) (citing *In re Search Warrant Issued June 13, 2019*, 942 F.3d 159, 170–71 (4th Cir. 2019)). "[E]*ach* of these four factors must be satisfied to obtain preliminary injunctive relief." *Henderson for Nat'l Lab. Rels. Bd. v. Bluefield Hosp. Co., LLC*, 902 F.3d 432, 439 (4th Cir. 2018) (emphasis in original) (explaining it is "unnecessary to address all four factors when one or more had not been satisfied"). And in the context of state prison administration, "intrusive and far-reaching federal judicial intervention in the details of prison management is justifiable only where state officials have been afforded the opportunity to correct constitutional infirmities and have abdicated their responsibility to do so." *Taylor v. Freeman*, 34 F.3d 266, 269 (4th Cir. 1994); *see also Wetzel v. Edwards*, 635 F.2d 283, 286 (4th Cir. 1980)

("[T]he decisions made by prison administrators in their informed discretion have been accorded 'wide-ranging deference' by the federal courts.") (citations omitted).

### III.

To warrant a preliminary injunction, Plaintiff must show that the irreparable harm she faces in the absence of relief is "neither remote nor speculative, but actual and imminent." *Direx Israel, Ltd. V. Breakthrough Med. Corp.*, 952 F.2d 802, 812 (4th Cir. 1991). A plaintiff's non-specific assertion that the defendants have threatened her are not enough to justify injunctive relief. *See Jackson v. Robinson*, No. 7:24-CV-00147, 2024 WL 3331673, at *2 (W.D. Va. July 8, 2024) (inmate's "vague allegation of threats" was not a sufficient basis to "justify court interference in matters of prison administration"); *Price v. Hubbard*, No. 7:24-CV-00495, 2024 WL 5053110, at *4 (W.D. Va. Dec. 10, 2024) (claim that defendant had overtly "threatened to assault" plaintiff and "write more false charges" was too vague to warrant a preliminary injunction); *see also Albritton v. Anderson*, No. 7:22CV00306, 2023 WL 8810809, at *1 (W.D. Va. Dec. 19, 2023) (describing allegation that plaintiff is "constantly being threatened and retaliated against with false charges" as "vague, lacking any details regarding who has threatened him, when, where, or with what charges").

Here, Plaintiff has not alleged any specific threats Defendants have supposedly made against her. Instead, Plaintiff's assertion of irreparable harm is based only on her generalized mistrust of Defendants, her assumptions about why a state magistrate has not responded to her criminal complaint, and her speculation about what Defendants may do in the future. This is not enough to warrant a TRO or injunction. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) ("Issuing a preliminary injunction based only on a possibility of irreparable harm

is inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."). Accordingly, the Court must deny her motion for injunctive relief.

Additionally, Plaintiff's motion must be denied because she has not shown entitlement to the specific injunctive relief she seeks; namely, orders that corrections officers be kept 5,000 yards from her or that she be transferred to another facility. "[S]weeping intervention in the management of state prisons is rarely appropriate when exercising the equitable powers of the federal courts." *Taylor v. Freeman*, 34 F.3d 266, 269 (4th Cir. 1994) (citations omitted). Indeed, "[t]he realities of running a penal institution are complex and unique to the prison environment," and "the decisions made by prison administrators in their informed discretion have been accorded 'wide-ranging deference' by the federal courts." *Wetzel v. Edwards*, 635 F.2d 283, 288 (4th Cir. 1980) (quoting *Jones v. N.C. Prisoner's Union*, 433 U.S. 119, 126 (1977)); *see also Albritton v. Anderson*, No. 7:22CV00306, 2023 WL 8810809, at *1 (W.D. Va. Dec. 19, 2023) ("Administration of state prisons, including where prisoners are housed, is left to prison administrators who are in the best position to evaluate prisoner needs, including prisoner safety; federal courts give high deference to the placement decisions of state prison officials.").

Here, Plaintiff makes only vague and speculative assertions of potential future harm. (*See* Pl.'s Mot. for TRO 1–2; Pl.'s Mot for Prelim. Inj. or TRO 1.) But such general allegations of possible danger or interference at the hands of Defendants do not satisfy the "heavy burden to justify court interference in matters of prison administration." *Jackson v. Robinson*, No. 7:24-CV-00147, 2024 WL 3331673, at *2 (W.D. Va. July 8, 2024) (noting a vague allegation of a threat by an unnamed individual "is essentially no evidence at all"); *see also Albritton v. Anderson*,

No. 7:22CV00306, 2023 WL 8810809, at *1 (W.D. Va. Dec. 19, 2023) (describing allegation that plaintiff is "constantly being threatened and retaliated against with false charges" as "vague, lacking any details regarding who has threatened him, when, where, or with what charges"). Plaintiff has not provided the Court with any information that would justify the extraordinary remedy of its intervention in matters of prison administration. For this reason, too, Plaintiff is not entitled to preliminary injunctive relief in the form of a facility transfer.

### IV.

For the reasons set forth above, Plaintiff's motions seeking a temporary restraining order or preliminary injunction (ECF Nos. 5, 7) will be denied without prejudice.

The Clerk is directed to send a copy of this Memorandum Opinion and the accompanying Order to Plaintiff.

**ENTERED** this 9th day of June, 2025.

*/s/ Thomas T. Cullen*
HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE